IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

KRISTIN NEESER,                          )
                                         )
    *Plaintiff*,                       )
                                         )
v.                                       )       Case No.: 3:20-cv-00389
                                         )
MAC ACQUISITION LLC, SULLIVAN'S          )       **COMPLAINT**
HOLDING LLC d/b/a SULLIVAN'S             )
STEAKHOUSE,                              )
                                         )
    *Defendants*.                      )
                                         )

COMES NOW, Kristin Neeser ("Plaintiff"), by and through undersigned counsel, hereby sets forth this action against Defendant MAC Acquisition LLC and Sullivan's Holding LLC d/b/a Sullivan's Steakhouse (collectively "Defendants"), and alleges as follows:

<u>PRELIMINARY STATEMENT</u>

1.    This action is brought individually for unpaid minimum wages, unpaid overtime compensation, liquidated damages, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Defendants had a systemic company-wide policy, pattern, or practice of failing to pay their employees at the appropriate statutory rate for hourly work, or for hours worked in excess of forty (40) each week at a rate of one and one-half (1.5) their regular rate of pay.

2.    This action is also brought individually for invalid and/or unauthorized deductions from wages, payment of all owed, earned, and promised wages and benefits, and for other relief as appropriate, under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*.

3.    Defendants' pay practices and policies were in direct violation of the FLSA and the

NCWHA. Accordingly, Plaintiff seeks unpaid straight-time compensation, unpaid overtime compensation, unpaid owed, earned, and promised wages and benefits, and illegally withheld and misappropriated tips or wages, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

4.     Additionally, this action is brought by Plaintiff to remedy Defendants' unlawful acts under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, upon Plaintiff's exercising her rights under the FMLA and Defendants' promised benefits, as Defendants failed to comply with its obligations under the FMLA and ultimately terminated Plaintiff in violation of the FMLA.

5.     Accordingly, Plaintiff seeks all available relief for these claims, including, but not limited to, back pay, front pay, past pecuniary losses, pre- and post-judgment interest, attorney's fees and costs, and all other relief permitted by applicable law.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq.*, and the FMLA, 29 U.S.C. § 2601, *et seq.*

7.     The United States District Court for the Western District of North Carolina has personal jurisdiction because Defendants conduct business in Mecklenburg County, North Carolina, which is located within this District.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conduct business within the Western District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

9.     The claims for violations of the NCWHA are based upon the statutory law of the

2

State of North Carolina.

10.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative fact as the FLSA claims.

11.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

12.     Plaintiff is an adult resident of the State of North Carolina, residing at 2141 Stonehenge Drive, Apt. 7, Raleigh, NC 27615.  She worked for Defendants from approximately May 1, 2013, until October 9, 2019.

13.     Plaintiff worked as an hourly server for Defendants, waiting on customers and providing diners with upscale service and a fine dining experience.

14.     Defendant MAC Acquisition LLC is a Delaware Limited Liability Company, has been in business since 2008, and has its principal place of business located at 1855 Blake Street, Suite 200, Denver, Colorado 80202.

15.     Defendant Sullivan's Holding LLC d/b/a Sullivan's Steakhouse is a wholly owned subsidiary of Defendant MAC Acquisition LLC, is a Delaware Limited Liability Company, has been in business since 2018, and has its principal place of business located at 1855 Blake Street, Suite 200, Denver, Colorado 80202.

16.     Upon information and belief, during the time period relevant to this action, each Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Plaintiff pursuant to the FLSA, the FMLA, and NCWHA, in that each Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Plaintiff, and each Defendant received the benefit of Plaintiff's labor.

3

## COVERAGE

17.     At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiff.

18.     At all times material to this action, Defendants were employers within the defined scope of the FLSA, 29 U.S.C. § 203(d).

19.     At all times material to this action, Plaintiff was an employee within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

20.     At all times material to this action, Defendants were an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

21.     At all times material to this action, Defendants were joint employers pursuant to 29 C.F.R. § 791.2.

22.     At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

23.     At all times material to this action, Defendants have been, and continue to be, an "employer" engaged in "commerce or in any industry or activity affecting commerce," which employ fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, within the meaning of the FMLA, 29 U.S.C. § 2611(4).

## FACTUAL ALLEGATIONS

24.     According to their website, Defendants own and operate thirteen "Sullivan's Steakhouse" restaurants, including the location Plaintiff worked in, located at 410 Glenwood Avenue, Suite 100, Raleigh, NC 27603; and also another location in North Carolina, located at 1928 South Boulevard, Suite 200, Charlotte, NC 28203. The mission of these restaurants is to provide food and hospitality services to the public.

25.     Plaintiff worked as a server at Defendants' restaurant.

26.     As a server, Plaintiff was responsible for interacting with customers, taking orders, and serving food and beverages, among other duties.  Plaintiff did not have any authority or discretion over the hiring and firing of other employees, nor could she have effectively recommended the hiring, firing, advancement, promotion, or other change of status of other employees.  Plaintiff's duties also did not include management of the business or any subdivision thereof, and she did not evaluate or discipline, set hours of work or rates of pay, or direct the work of other employees.

27.     Plaintiff typically worked five (5) days per week, equating to about thirty-five (35) to forty (40) hours per week, but occasionally worked over forty (40) hours per week.

28.     Plaintiff worked as a non-exempt employee at Defendants' restaurant.

29.     Defendants controlled the work schedule and rate of pay for Plaintiff.

30.     Defendants paid Plaintiff a direct hourly wage below the statutory minimum wage by taking the "tip credit" under the FLSA, 29 U.S.C. § 203(m).

31.     Defendants used Plaintiff's tips as wages in order to satisfy the remainder of their statutory minimum wage obligations.  In other words, consistent with Fourth Circuit Court of Appeals authority, Defendants utilized the tip credit, and therefore Plaintiff's tips constituted

5

wages.

32.    Defendants paid Plaintiff overtime at a rate of one and one-half (1.5) her aforementioned direct hourly wage rate, which was below the statutory minimum wage, due to Defendants' taking of the tip credit under the FLSA, 29 U.S.C. § 203(m).

33.    Defendants used Plaintiff's tips as wages in order to satisfy the remainder of their statutory overtime obligations.  In other words, consistent with Fourth Circuit Court of Appeals authority, Defendants utilized the tip credit, and therefore Plaintiff's tips constituted wages.

34.    Defendants utilized a mandatory tip pool to reduce their labor costs and supplement the compensation that they pay to non-customarily tipped employees.

35.    Defendants required Plaintiff to remit a set percentage of her tips/wages into Defendants' mandatory tip pool.

36.    Defendants included, in their mandatory tip pool, an employee who was not a customarily and regularly tipped employee, in direct contravention of requirements under the FLSA, 29 U.S.C. § 203(m).

37.    From approximately 2016 until Plaintiff's termination in October, 2019, Dave Mason, whom was employed by Defendants as an "Expo" during this time period, was included as a tip pool participant in Defendants' mandatory tip pool, and was not customarily and regularly tipped employees within the scope of the FLSA, 29 U.S.C. § 203(m).

38.    In a veiled recognition that its tip pool policy was invalid, Defendants sought to change the job title of Dave Mason from "Expo" to "Runner," despite no change in his level of interaction with customers, nor his actual job duties. Dave Mason also continued to wear a chef's coat with "Expo" embroidered on it. Defendants then removed "Expos" from their "Acknowledgement of the Review of the Tip Out Policy" form that they had all tipped employees,

6

including Plaintiff, sign.

39.     Dave Mason, while organizing the back-of-the-house flow, rarely, as part of his job duties as an Expo and Runner, took orders from customers, served customers, or interacted with customers, and was not a customarily and regularly tipped employees within the scope of the FLSA, 29 U.S.C. § 203(m).

40.     Dave Mason's duties as an Expo and Runner included oversight of all kitchen operations and staff and earning of direct wages substantially higher than all other tipped employees.

41.     Dave Mason's duties as an Expo and Runner rendered him not a customarily and regularly tipped employee within the scope of the FLSA, 29 U.S.C. § 203(m).

42.     Dave Mason was also a purely back-of-the-house employee in his capacity as an Expo and Runner, who was only visible to customers because there was no wall separating the dining room from the kitchen.

43.     As part of his duties as an Expo and Runner, Dave Mason was never in the front of the restaurant.  Instead, he spent all of his time in or near the kitchen, never ran food, and wore typical kitchen attire, including a chef's coat.  He rarely, if ever, communicated or had direct interaction with customers.

44.     Dave Mason's back-of-the-house status rendered him not a customarily and regularly tipped employee within the scope of 29 U.S.C. § 203(m).

45.     Upon information and belief, Defendants used tips earned by Plaintiff to offset their ordinary business expenses.  In part, Defendants used the tips of Plaintiff to reduce their business and employment costs by having Plaintiff supplement the compensation that Defendants paid to their other non- customarily tipped and/or supervisory employees.

7

46.     Defendants' compensation system was also the subject of FLSA lawsuits in several prior cases. *See Munoz et al. v. Sullivan's of Illinois, Inc.*, CA No. 1:17-cv-01089 (N.D. Ill. 2017) (three plaintiffs claimed violation of the tip-credit provisions by operating an illegal tip pool. Tips were improperly shared with management. The parties reached an early settlement and the case was dismissed); *Calabrese v. MAC Acquisition LLC et al.*, CA No. 2:16-cv-00867-ER (E.D. Pa. 2016) (collective/class action on behalf of "tipped employees" of Romano's Macaroni Grill restaurant, another restaurant that Defendant MAC Acquisition LLC owns and operates. Plaintiffs claimed that Defendants' did not properly inform their tipped employees of their intention to utilize a "tip credit" and improperly applied a "tip credit". The action was eventually dismissed based on the "First-Filed Rule" due to there being several similar pending lawsuits against the various Defendants); *Ekryss et al.v. Ignite Restaurant Group, Inc. et al.*, CA No. 6:2015-cv-06742 (W.D.N.Y. 2016) (This was the "first filed" case referenced above in *Calabrese v. MAC Acquisition LLC et al.* This was a proposed collective/class action asserting claims under the FLSA and various state wage and hour laws. The case was eventually dismissed as the plaintiffs had signed binding arbitration provisions).

47.     In these previous actions, Defendants faced challenges related to their straight-time wage violations, overtime violations, and improper tip pooling arrangement, including the presence of managers and/or employees who were not customarily or regularly tipped employees.

48.     Defendants have willfully violated the statutory rights of Plaintiff under both the FLSA and the NCWHA, resulting in damages to Plaintiff in the form of unpaid straight-time wages, unpaid overtime wages, and misappropriated tips/wages, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

## COMMON BUSINESS PRACTICES AND JOINT EMPLOYMENT FACTUAL ALLEGATIONS

49.     Defendants, both Delaware Limited Liability Companies, also have the same principal place of business located at 1855 Blake Street, Suite 200, Denver, Colorado 80202.

50.     The Privacy Policy contained on Sullivan Steakhouse's website explicitly states that Defendant Sullivan's Holding LLC is a "related, affiliated or subsidiary compan[y]" of Defendant MAC Acquisition LLC.  *See Sullivan's Steakhouse*, Privacy Policy, https://sullivanssteakhouse.com/privacy-policy/ (last visited June 1, 2020).

51.     Additionally, this Privacy Policy also directs anyone with questions about the policy to contact a single legal department and General Counsel for both Defendants, located at 1855 Blake Street, Suite 200, Denver, Colorado 80202. *See id.* Thus, both Defendants share employees.

52.     Furthermore, this Privacy Policy lists the email address for the legal department as "legal@macgrill.com." *See id.* The policy also lists "marketing@macgrill.com" as the appropriate email contact for any California resident who wishes to "request certain information regarding our disclosure of personal information to third parties for their direct marketing purposes." *See id.* This indicates that Defendant MAC Acquisition LLC handles administrative tasks for Defendant Sullivan's Holding LLC.

53.     When Plaintiff had issues related to her employment, she was instructed by managers at Defendant Sullivan's Holding LLC to speak with the Human Resources Department of Defendant MAC Acquisition LLC.  Such Human Resources Department also has an email address of ethicshotline@macgrill.com.

1.     In addition to the departments above, Defendants shared at least one company official, Dena Flageolle, who acted as Licensing Manager for Defendants and filed official business documents on their behalf.

9

2.      The work performed by Plaintiff was integral to both Defendants.

3.      Both Defendants directly or indirectly exerted control over Plaintiff.

4.      Upon information and belief, at all times material to this complaint, Defendants' uniform approach throughout their operations in securing, assigning, monitoring, and compensating Plaintiff was intentionally done to evade their obligations under the FLSA and NCWHA.

## FMLA RELATED FACTUAL ALLEGATIONS

5.      Throughout the relevant time period, Defendants granted FMLA leave requests by Plaintiff's fellow employees, both for personal medical care and the care of family members.

6.      In September 2019, Plaintiff became ill at work when Defendants were performing renovations to the restaurant.

7.      During these renovations, mold was uncovered in the restaurant, exposing those in the restaurant (including employees) to harmful mold spores.

8.      After the mold was exposed, Plaintiff began getting sick whenever she was at work.

9.      On September 30, 2019, after Plaintiff's illness became severe, affecting her ability to work, Plaintiff notified her manager, Megan Price, through text message that she was going to the Emergency Room because "[she] thought [she] was having an allergic reaction to mold since [she] gets sick when [she] go[es] to work."

10.     After visiting the Emergency Room twice within one week, Plaintiff subsequently provided Price with the doctor's notes that the Emergency Room gave Plaintiff after each visit.

11.     Thus, beginning as early as September 2019, Defendants were aware of Neeser's need to seek leave from work for her own health reasons, including two visits to the Emergency Room.

12.     Despite Plaintiff requesting time off for such medical reasons, Defendants failed to inform Plaintiff of her rights under the FMLA or the company's procedure for requesting FMLA leave. Ultimately, Defendants explicitly failed to provide Plaintiff any notice of her FMLA rights.

13.     Defendants had ample notice of Plaintiff's condition and opportunity to provide her with such notice. Plaintiff was in active communication with her manager, Megan Price, through both text and phone calls before, during, and after her visits to the Emergency Room.

14.     Such texts include one on October 1, 2019, where Plaintiff told Price "I can't work tonight, they gave me note. They said if I don't feel better tomorrow I have to go back to the er." Plaintiff then texted Price on October 3, 2019, stating "I need some more time."

15.     Additionally, Plaintiff received two doctor's notes from Rex Emergency Department – one on October 1, 2019, and another on October 5, 2019 – providing the necessary documentation of her health concerns to Defendants. The October 5, 2019, note explicitly indicated that Plaintiff "may return to work on [October 7, 2019]," but "must be evaluated by the recommended follow-up provider or clinic if [Plaintiff] is unable to resume activities on this date."

16.     Rather than informing Plaintiff of her eligibility to take FMLA leave, Defendants instead terminated her employment on October 9, 2019, due to her need to take time off because of her illness. Upon terminating her, Price sent Plaintiff a text message stating "there were multiple shifts within those dates for which you did not show up or call to check in. Unfortunately, we have decided to go our separate ways."

17.     However, Plaintiff followed Defendants' policies and procedures in reporting her illness to her manager, Price, and sought to release some of her upcoming scheduled shifts so that other servers could cover for her. Plaintiff informed Price of all shifts that she would need to miss because of her illness.

11

18.     Price also told Plaintiff through text message on October 9, 2019, that "you didn't show up on Friday [October 4, 2019]."

19.     Plaintiff was not scheduled for work on October 4, 2019, as her scheduled was modified to remove her shift that day at 11:43am the morning of October 4, 2019, prior to any supposed missed shift. Plaintiff's schedule was modified because she had released her scheduled shift on October 4, 2019, so that another server could cover the shift for her.

20.     Upon presenting Price with this information, Price told Plaintiff that "I have already spoken with HR. You're welcome to work at other locations."

21.     Plaintiff then contacted a representative at Defendants' Human Resources Department, whom informed Plaintiff that the termination would stand because Plaintiff did not follow Defendants' procedures in requesting FMLA leave, despite Plaintiff never having been informed of her rights under the FMLA nor of Defendants' procedure for requesting family and medical leave.

22.     Despite Plaintiff requesting time off for qualifying medical reasons, Defendants never informed Plaintiff of her rights under the FMLA nor of the company's procedure for requesting family and medical leave. Furthermore, Defendants never indicated to Plaintiff that she may not qualify for FMLA leave.

**COUNT ONE**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 203(m), 206**
**(Violation of Tip Credit and Failure to Pay Proper Minimum Wage)**

23.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

24.     Pursuant to the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked.

12

25.     The FLSA, 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, provides an exception to the aforementioned minimum wage rate of $7.25 per hour, allowing certain employers to take a "tip credit," and count tips received by eligible employees toward the employer's minimum wage obligations, with a maximum credit claimed for each employee of $5.12 per hour.

26.     In order to lawfully utilize the tip credit allowance, the FLSA, 29 U.S.C. § 203(m), requires in part that "all tips received by [each] employee [be] retained by the employee," except in the instance of an operation of a valid tip pool.

27.     A tip pool is only valid when it is comprised solely of employees who "customarily and regularly receive tips."

28.     When employees who do not "customarily and regularly receive tips" share in a tip pool, the tip pool is invalidated.

29.     Here, Defendants included in their tip pool the "Expo," Dave Mason, who was a purely back-of-the-house employee and did not "customarily and regularly receive tips," therefore invalidating Defendants' mandatory tip pool.

30.     When a tip pool is invalidated, the employer can no longer enjoy the benefits of the tip credit provision under 29 U.S.C. § 203(m).

31.     Without the benefits of the tip credit provision, Defendants must pay Plaintiff an hourly rate of at least the statutory minimum wage of $7.25 per hour for all hours worked, without any credit for the tips received by Plaintiff.

32.     Defendants willfully failed to pay Plaintiff the statutory minimum wage rate, since they changed the job title of "Expo's" to "Runners," despite no change in the job duties of the "Expo" Dave Mason, among other acts or omissions.

33.     Defendants also acted willfully since they were subject to similar lawsuits, alleging,

in part, failure to pay straight-time wages related to mandatory tip misappropriations.

34. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), which permits the recovery of unpaid minimum wages for up to three (3) years, rather than two (2) years.

35. Similarly, for the reasons stated above, Defendants cannot affirmatively defend their failure to pay the appropriate minimum wage rate as having been done in good faith, entitling Plaintiff to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b).

36. As such, Plaintiff seeks to recover from Defendants the following damages:

    a. Minimum wages due;

    b. Liquidated damages in an equal amount;

    c. Reasonable attorneys' fees and costs; and

    d. All other legal and equitable relief as the Court deems just and proper.

**<u>COUNT TWO</u>**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**(Failure to Pay Proper Overtime Wage)**

37. Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

38. Pursuant to the FLSA, 29 U.S.C. § 207, an employer must pay non-exempt employees at one and one-half (1.5) their regular hourly rate for all hours worked over forty (40) in a single workweek.

39. Plaintiffs sometimes worked greater than forty (40) hours per week.

40. Without the benefit of the tip credit provision, for the reasons stated above,

14

Defendants must pay Plaintiff for all overtime hours worked at a rate of one and one-half (1.5) her appropriate regular hourly wage of $7.25 per hour, equal to $10.88 per hour for all hours worked over forty (40) each week.

41.     Defendants willfully failed to pay Plaintiff the proper amount for all hours worked over forty (40) in a single workweek for the reasons stated above.

42.     Defendants also acted willfully since they were subject to similar lawsuits, alleging, in part, failure to pay appropriate overtime wages related to mandatory tip misappropriations.

43.     The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), which permits the recovery of unpaid overtime wages for up to three (3) years, rather than two (2) years.

44.     Similarly, for the reasons stated above, Defendants cannot affirmatively defend their failure to pay appropriate overtime wages as having been done in good faith, entitling Plaintiff to liquidated damages in an amount equal to the amount of unpaid overtime wages under 29 U.S.C. § 216(b).

45.     As such, Plaintiff seeks to recover from Defendants the following damages:

a.   Overtime wages due;

b.   Liquidated damages in an equal amount;

c.   Reasonable attorneys' fees and costs; and

d.   All other legal and equitable relief as the Court deems just and proper.

## COUNT THREE
### Violation of the North Carolina Wage and Hour Act
### N.C. Gen. Stat. §§ 95-25.6, 95-25.7, 95-25.8, 95-25.12
### (Unpaid Owed, Earned, and Promised Wages and Benefits; Invalid or Unauthorized Deductions from Wages)

46.     Plaintiff incorporates by reference all preceding paragraphs as if the same were

repeated here verbatim.

47.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff within the meaning of the NCWHA.

48.    Defendants employed Plaintiff within the State of North Carolina.

49.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8, and the accompanying regulation, 13 N.C. Admin. Code 12 § .0305(g), "If an employer withholds or diverts wages for purposes not permitted by law, the employer shall be in violation of G.S. 95-25.6 . . . even if the employee authorizes the withholding in writing pursuant to G.S. 95-25.8(a), because that authorization is invalid."

50.    Funds received directly by Plaintiff as tips constituted "wages" because the tip credit was taken, and Defendants treated them as wages, consistent with explicit Fourth Circuit authority.

51.    Regardless of whether Defendants may have received authorization otherwise in compliance with N.C. Gen. Stat. § 95-25.8(a), Defendants withheld Plaintiff's wages "for purposes not permitted by law," as provided above, and are therefore liable for these unlawful withholdings.

52.    Defendants unlawfully withheld and diverted funds from the compensation earned by Plaintiff for an improper purpose, to offset Defendants' business expenses, including, but not limited to, the cost of employing other workers, and through an invalid and illegal tip pooling arrangement, in direct violation of the NCWHA.

53.    Additionally, pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8(a)(3), an employer may only withhold or divert any portion of an employee's wages, "when the amount of the proposed deduction is not known and agreed upon in advance," after meeting several requirements, including, but not limited to: (1) receiving written authorization from each

16

employee; (2) providing the reason for each deduction; (3) providing advance written notice of the actual amount to be deducted; and (4) providing written notice to employees of their right to withdraw authorization.

54.     Beyond withholding Plaintiff's wages "for purposes not permitted by law," Defendants violated N.C. Gen. Stat. § 95-25.8(a)(3) by not receiving sufficient authorization from Plaintiff, including, but not limited to, failing to provide advance written notice of the actual amount to be deducted, or failure to provide written notice of employees' right to withdraw authorization.

55.     As a result of Defendants' unlawful policies and practices, Plaintiff has been deprived of compensation due and owing.

56.     Consistent with the above, Defendants failed to pay Plaintiff all owed, promised, and earned wages, in violation of N.C. Gen. Stat. § 95-25.6.

57.     For the reasons stated above, including, but not limited to, their previous similar lawsuits alleging tip misappropriations, Defendants cannot affirmatively defend their NCWHA violations as having been done in good faith, entitling Plaintiff to liquidated damages in an amount equal to the amount of unpaid overtime wages under N.C. Gen. Stat. § 95-25.22(a1).

58.     As such, Plaintiff seeks to recover from Defendants the following damages:

    a.  Unpaid owed, earned, and promised wages and benefits;

    b.  Misappropriated and/or unlawfully deducted wages;

    c.  Liquidated damages in an equal amount;

    d.  Reasonable attorneys' fees and costs;

    e.  Prejudgment interest; and

    f.  All other legal and equitable relief as the Court deems just and proper.

17

## COUNT FOUR
## Violation of the Family Medical Leave Act
## 29 U.S.C. § 2601, *et seq.*
## (Interference)

59.     Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

60.     Among the stated purposes of the FMLA, under 29 U.S.C. § 2601(b)(1) and (2), are to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity," and "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."

61.     The FMLA, pursuant to 29 U.S.C. § 2615(a)(1), prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]."

62.     Further, an employer must provide an employee of the eligibility to take FMLA leave once the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason. *See* 29 CFR § 825.300 (b)(1).

63.     Refusing to authorize FMLA leave, discouraging an employee from using such leave, and manipulation to avoid responsibilities under the FMLA are qualifying examples of forbidden interference with an employee's right to seek FMLA leave. *See* 29 C.F.R. 825.220(b).

64.     At all relevant times, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2), since she had been employed for at least twelve months by Defendants, and she had provided at least 1,250 hours of service with Defendants during the preceding twelve-month period.

exercise of FMLA rights as a negative factor in employment actions, such as adverse treatment, disciplinary actions, or termination.

71.    The FMLA, pursuant to 29 U.S.C. § 2614(a), prohibits an employer from discharging an employee for taking FMLA leave and requires that an employee must be restored to the position of employment held by the employee when the leave commenced.

72.    Defendant retaliated and/or discriminated against Plaintiff for exercising or attempting to exercise her FMLA rights by terminating Plaintiff for needing FMLA leave.

73.    The FMLA retaliation violation of Defendant, as described herein, was not in good faith, and Defendant did not have reasonable grounds for believing that its acts or omissions were not a violation of the FMLA, entitling Plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

74.    Defendant's violations entitle Plaintiff to all wages, salary, benefits, or other compensation denied to or lost by Plaintiff, monetary losses sustained, an equal amount of liquidated damages, interest at the prevailing rate, and attorneys' fees and costs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1.    Award Plaintiff actual damages for all unpaid and misappropriated wages and benefits found due to Plaintiff, and liquidated damages equal in amount, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a1), and pursuant to the FLSA, 29 U.S.C. § 216(b);

2.    Award Plaintiff pre- and post-judgment interest at the statutory rate, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), and pursuant to the FLSA, 29 U.S.C. § 216(b);

3.    Award Plaintiff attorneys' fees, costs, and disbursements as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d), and pursuant to the FLSA, 29 U.S.C. § 216(b);

4.    Award Plaintiff all wages, salary, benefits, or other compensation denied to or lost by Plaintiff, and monetary losses sustained, as a result of Defendants' unlawful actions under the FMLA;

5.    Award Plaintiff further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this, July 16, 2020.

> _/s/ Gilda A. Hernandez_
> Gilda A. Hernandez (NCSB No. 36812)
> Charlotte Smith (NCSB No. 53616)
> Robert W. T. Tucci (NCSB No. 55014)
> **THE LAW OFFICES OF GILDA A.**
> **HERNANDEZ, PLLC**
> 1020 Southhill Drive, Ste. 130
> Cary, NC 27513
> Tel: (919) 741-8693
> Fax: (919) 869-1853
> ghernandez@gildahernandezlaw.com
> csmith@gildahernandezlaw.com
> rtucci@gildahernandezlaw.com
>
> _Attorneys for Plaintiffs_